**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

05 12433 NMG

GENERAL MEDIA COMMUNICATIONS, INC.,

Plaintiff,

v.

FELT ENTERPRISES, INC.,

Defendant.

Civil Action No.

RECEIPT # 68629
AMOUNT $ 250
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 12/5/05
MAGISTRATE JUDGE Alexander
FILED CLERKS OFFICE
2005 DEC -2 P 4: 29
U.S. DISTRICT COURT DISTRICT OF MASS.

**COMPLAINT**

Plaintiff General Media Communications, Inc. ("General Media"), by and through its attorneys Proskauer Rose LLP, alleges as follows:

## I. NATURE OF THE ACTION

1. General Media is an international multimedia entertainment company that publishes the well-known, nationally recognized adult publication known as PENTHOUSE magazine and is the owner of numerous federally registered trademarks for, inter alia, the name PENTHOUSE and for marks incorporating the name PENTHOUSE (collectively, the "PENTHOUSE Marks") used in connection with a variety of goods and services.

2. Among its various businesses, General Media has licensed the PENTHOUSE Marks for a series of luxury gentlemen's clubs in a number of locations throughout the United States, including Chicago, Illinois; Dallas, Texas; Denver, Colorado; Houston, Texas; New Orleans, Louisiana; Myrtle Beach, South Carolina; New York, New York; Phoenix, Arizona; St. Louis, Missouri; and Wellford, South Carolina.

3. Recently, Plaintiff became aware that Defendant has been using the name PENTHOUSE in connection with and to identify its nightclub, restaurant, and bar venue located

in Boston, Massachusetts. Defendant has advertised its PENTHOUSE venue in print ads and on web sites, which are likely to cause confusion with General Media and the PENTHOUSE Marks. Moreover, Defendant's unauthorized use of the name PENTHOUSE plainly is designed to create the false impression that Defendant's entertainment services are authorized by or associated or affiliated with General Media and its PENTHOUSE goods and services. Defendant has continued its willful violation of General Media's trademark and related rights despite having been repeatedly warned that such conduct would lead to litigation. Accordingly, General Media has been forced to commence this action against the Defendant, seeking injunctive relief, compensatory and exemplary damages, and the recovery of its costs and attorneys fees.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), because it involves claims arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III. THE PARTIES

5. General Media is a corporation organized and existing under the laws of the State of New York, and has a principal place of business at 2 Penn Plaza, 11th Floor, Suite 1125, New York, New York 10021.

6. Upon information and belief, defendant Felt Enterprises, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with an address for doing business at 533 Washington Street, Boston, Massachusetts 21111.

## IV. FACTUAL BACKGROUND

### A. Penthouse Is One of the Most Famous Brands in Adult Entertainment

7. General Media is an international multimedia company that distributes and provides adult entertainment through, inter alia, magazines, books, the Internet, videos, films, pay-per-view and on-demand cable channels, licensed adult nightclubs, and licensed adult products. General Media also sells PENTHOUSE branded consumer merchandise on-line and through boutique stores. In addition, General Media licenses gentlemen's clubs internationally. Founded in 1965, PENTHOUSE is globally recognized as one of the most famous brands in adult entertainment.

8. Since in or about 1969, General Media and its predecessors in interest and licensees have published PENTHOUSE Magazine throughout this judicial district, throughout the United States, and internationally. Since that time, by virtue of its continued popularity, General Media has generated many millions of dollars of sales, and General Media has expanded to offer a broad array of products and services under the PENTHOUSE Marks. These other products and services include, but are not limited to, restaurant, nightclub, and bar services, live dance performances, videotapes, audiotapes, CDs, and sponsorship of goods and services authorized by and associated with General Media. As a result of General Media's usage and promotion of its PENTHOUSE Marks, General Media has developed valuable goodwill and strong common law trademark rights in its PENTHOUSE Marks.

### B. General Media Owns Numerous Marks Incorporating the PENTHOUSE Mark

9. General Media owns numerous federally registered trademarks and service marks incorporating the PENTHOUSE mark, including, but not limited to, PENTHOUSE® for night club services and restaurant and bar services (U.S. Registration No. 3,007,070), THE

PENTHOUSE CLUB® for restaurant, night club and bar services (U.S. Registration No. 2,810,417), and PENTHOUSE MENS CLUB® for restaurant, night club and bar services (U.S. Registration No. 2,450,888). In addition, General Media owns the following U.S. trademark and service mark registrations for use in combination with the following goods and services:

| Reg. No. | Trademark/Service Mark | Goods and Services |
|---|---|---|
| 880,992 | PENTHOUSE | Magazines |
| 1,020,498 | PENTHOUSE FORUM | Magazines |
| 1,064,636 | PENTHOUSE | Promoting the goods and services of others through advertising |
| 1,074,534 | PENTHOUSE | Calendars |
| 1,289,736 | PENTHOUSE PETS | Air fresheners |
| 1,367,554 | PENTHOUSE LETTERS | Adult entertainment magazines |
| 1,430,050 | PENTHOUSE | Prerecorded video tapes |
| 1,515,321 | PENTHOUSE | Wristwatches and clocks |
| 1,960,448 | PENTHOUSE MEN'S ADVENTURE COMIX | Comic books featuring adult themes |
| 1,963,425 | PENTHOUSE COMIX | Comic books featuring adult themes |
| 2,243,111 | PENTHOUSE COMIX | Computer services providing access to a wide range of information |
| 2,337,421 | PENTHOUSEMAG.COM | On-line magazine |
| 2,386,351 | PENTHOUSE | Playing cards |
| 2,435,702 | PENTHOUSE | Candles and gels |
| 2,441,085 | PENTHOUSE.COM | On-line magazine |
| 2,686,386 | PENTHOUSE | Sexual aides |
| 2,701,927 | THE GIRLS OF PENTHOUSE | Periodicals |

| Reg. No. | Trademark/Service Mark | Goods and Services |
|---|---|---|
| 2,738,555 | THE PENTHOUSE SELECTION | Cigars |
| 2,738,557 | PENTHOUSE | Cigars |
| 2,952,697 | PENTHOUSE BOUTIQUE | Retail store services, featuring adult products |
| 2,987,847 | PENTHOUSE CHANNEL | Coin operated video games |

10. The above-referenced registrations are valid and subsisting and are owned by General Media, and U.S. Registration Nos. 880,922, 1,020,498, 1,064,636, 1,074,534, 1,289,736, 1,367,554, 1,430,050, 1,515,321, 1,960,448, and 1,963,425 are now incontestable pursuant to Sections 15 and 33(b) of the Lanham Act, 15 U.S.C. §§ 1065 and 1115(b).

11. Pursuant to the Lanham Act, General Media's federal registrations constitute prima facie evidence of: (a) the validity of the PENTHOUSE Marks, (b) General Media's ownership of the PENTHOUSE Marks; and (c) General Media's exclusive right to use the PENTHOUSE Marks on or in connection with the goods and service specified in the registrations. In addition, General Media's registrations constitute constructive notice of General Media's claim of ownership of the PENTHOUSE Marks.

12. For over 30 years, General Media has sold and continues to sell many millions of dollars worth of goods and services under the PENTHOUSE Marks, and General Media has promoted and continues to promote its PENTHOUSE Marks for such goods and services. Consumers interested in the adult entertainment market understand that products or services bearing PENTHOUSE Marks in the adult entertainment market are endorsed, associated, affiliated, consented to, or sponsored by General Media and meet the standard of quality they have come to expect from products and services bearing the PENTHOUSE Marks.

13. As a result of General Media's long and extensive usage and promotion of its PENTHOUSE Marks in interstate commerce, such marks have become distinctive to designate General Media's goods and services, to distinguish General Media's goods and services from others, and General Media has now built up and owns valuable goodwill which is symbolized by the PENTHOUSE Marks. By virtue of General Media's extensive use and advertising of its PENTHOUSE Marks, such marks have become well-known and famous in the United States.

**C. Defendant's Business and Unauthorized Use of the PENTHOUSE Marks**

14. Upon information and belief, Defendant is operating a nightclub, restaurant, and bar at which it has been offering and continues to offer and sell entertainment services under the name PENTHOUSE, including "Penthouse," "The Penthouse," "The Penthouse Club," and "The Penthouse Level." Defendant has advertised and continues to advertise its PENTHOUSE venue in print ads and on web sites, which are likely to cause confusion and suggest an association with General Media and the PENTHOUSE Marks. For example, Defendant has advertised:





15. In addition, Defendant has used the following infringing logos to advertise its nightclub, restaurant, and bar services:

The Penthouse     The Penthouse Level

16. Defendant's use of the PENTHOUSE Marks is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source, sponsorship, approval, association or affiliation of Defendant's business, products or services. Consumers are likely to believe, erroneously, that Defendant's services are affiliated or connected with General Media's goods and services offered under the PENTHOUSE Marks.

17. Defendant's use of the PENTHOUSE Marks enables it to trade on and receive the benefit of goodwill built up by General Media and its predecessors at great labor and expense over many years, and to gain acceptance for its services not solely on its own merit, but on the reputation and goodwill associated with General Media's marks, products, and services. Defendant's infringing use of the PENTHOUSE Marks removes from General Media the ability to control the nature and quality of products and services provided under its marks, and places the valuable reputation and goodwill of General Media in the hands of the Defendant, over whom General Media has no control.

18. Defendant's use of the PENTHOUSE Marks in commerce is without the authority, consent or permission of General Media. By virtue of one or more of Penthouse's federal trademark and service mark registrations, Defendant was put on constructive notice of General Media's rights to the PENTHOUSE Marks. Moreover, Defendant had also been placed on actual notice of General Media's rights to the PENTHOUSE Marks.

19. By reason of Defendant's acts alleged herein, General Media has suffered and will continue to suffer damage to its business, reputation, and good will, as well as the loss of sales and profits General Media would have made but for Defendant's acts.

**COUNT I – TRADEMARK INFRINGEMENT UNDER LANHAM ACT § 32**

20. Plaintiff realleges paragraphs 1-19 of this Complaint as if fully set forth herein.

21. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services in competition with General Media constitutes trademark infringement pursuant to 15 U.S.C. § 1114. Defendant's intentional and willful infringement of the PENTHOUSE Marks has caused and will continue to cause damage to General Media, and is causing irreparable harm to General Media for which there is no adequate remedy at law.

**COUNT II – TRADEMARK DILUTION UNDER LANHAM ACT § 43**

22. Plaintiff realleges paragraphs 1-21 of this Complaint as if fully set forth herein.

23. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services constitutes willful trademark dilution pursuant to 15 U.S.C. § 1125(c). Defendant's intentional and willful dilution of the PENTHOUSE Marks has caused and will continue to cause damage to General Media, and is causing irreparable harm to General Media for which there is no adequate remedy at law.

**COUNT III – UNFAIR COMPETITION UNDER LANHAM ACT § 43**

24. Plaintiff realleges paragraphs 1-23 of this Complaint as if fully set forth herein.

25. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services in competition with General Media constitutes unfair competition pursuant to 15 U.S.C. § 1125(a). Defendant's unauthorized use of the PENTHOUSE Marks is likely to cause confusion, mistake, and deception among consumers.

Defendant's unfair competition has caused and will continue to cause damage to General Media, and is causing irreparable harm to General Media for which there is no adequate remedy at law.

**COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT**

26. Plaintiff realleges paragraphs 1-25 of this Complaint as if fully set forth herein.

27. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services in competition with General Media constitutes trademark infringement prohibited by the common law. Defendant's intentional and willful infringement of the PENTHOUSE Marks has caused and will continue to cause damage to General Media, and is causing irreparable harm to General Media for which there is no adequate remedy at law.

**COUNT V – TRADEMARK DILUTION UNDER M.G.L. 110B**

28. Plaintiff realleges paragraphs 1-27 of this Complaint as if fully set forth herein.

29. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services constitutes willful trademark dilution prohibited by the Massachusetts anti-dilution act, Mass. Gen. Laws ch. 110B, § 12. Defendant's intentional and willful dilution of the PENTHOUSE Marks has caused and will continue to cause damage to General Media, and is causing irreparable harm to General Media for which there is no adequate remedy at law.

**COUNT VI – UNFAIR COMPETITION UNDER M.G.L. 93A**

30. Plaintiff realleges paragraphs 1-29 of this Complaint as if fully set forth herein.

31. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services in competition with General Media constitutes unfair competition pursuant to Mass. Gen. Laws ch. 93A. Defendant's unauthorized use of the PENTHOUSE Marks is likely to cause confusion, mistake, and deception among consumers.

Defendant's unfair competition has caused and will continue to cause damage to General Media, and is causing irreparable harm to General Media for which there is no adequate remedy at law.

**COUNT VII – UNFAIR BUSINESS PRACTICES UNDER M.G.L. 93A**

32. Plaintiff realleges paragraphs 1-31 of this Complaint as if fully set forth herein.

33. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services in competition with General Media constitutes unfair and/or deceptive business practices pursuant to Mass. Gen. Laws ch. 93A. Defendant's unauthorized use of the PENTHOUSE Marks constitutes unfair and/or deceptive practices occurring in trade or commerce that impacts the public interest and has caused injury to General Media. Defendant's unfair and/or deceptive business practices have caused and will continue to cause damage to General Media, and is causing irreparable harm to General Media for which there is no adequate remedy at law.

**COUNT VIII – UNJUST ENRICHMENT**

34. Plaintiff realleges paragraphs 1-33 of this Complaint as if fully set forth herein.

35. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services in competition with General Media constitutes unjust enrichment prohibited by the common law. Defendant has no legitimate interest in, or right to, any profits resulting from its unlawful acts. Defendant has been and continues to be unjustly enriched at General Media's expense for which there is no adequate remedy at law.

**REQUEST FOR PRELIMINARY INJUNCTION**

36. Plaintiff realleges paragraphs 1-35 of this Complaint as if fully set forth herein.

37. Defendant's use of the PENTHOUSE Marks to advertise, promote and market its nightclub, restaurant, and bar services in competition with General Media has damaged and is

continuing to damage General Media by its infringing and unlawful acts. Unless Defendant is restrained by this Court, Defendant will continue to cause irreparable injury to General Media for which there is no adequate remedy at law. General Media is entitled to a preliminary injunction enjoining Defendant's continued wrongdoing until a trial on the merits. General Media has a likelihood of success on the merits on the causes of action alleged herein.

38. As described above, General Media will suffer irreparable injury if this Court does not grant a preliminary injunction. Unless Defendant is enjoined and restrained, it will continue to injure General Media through the unauthorized use of the PENTHOUSE Marks, all to General Media's irreparable damage. The continued unauthorized use of these marks will increasingly cause injury to General Media. Under these circumstances, it would be impossible to ascertain the amount of compensation that will afford General Media adequate relief for the injury to its reputation, goodwill, and its PENTHOUSE Marks.

39. The hardship that General Media will suffer if Defendant is allowed to continue its use of the PENTHOUSE Marks through trial far outweigh any hardship to Defendant if an injunction is not issued. General Media has spent over 30 years promoting its PENTHOUSE Marks and developing its good will. As a result, the harm suffered by Defendant upon issuance of this injunction is minimal compared to the irreparable injury to General Media if it is not issued.

40. Public interest weighs in favor of this Court granting a preliminary injunction. The public is deceived and confused by Defendant's unauthorized use of the PENTHOUSE Marks, and likely will continue to be deceived, confused, and misled as a result of Defendant's continuing acts. As such, a preliminary injunction is appropriate relief until a trial on the merits.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

1. That Defendant and all those acting in concert or participation with Defendant be preliminarily and permanently enjoined and restrained from:

a. using any trade name, trademark, service mark, Internet web page, signage, television, business card, radio, and/or print advertising, or any materials that depict, comprise, contain, or consist of any name or mark incorporating the PENTHOUSE Marks or confusingly similar to the PENTHOUSE Marks;

b. otherwise competing unfairly with General Media in any manner, including without limitation, (i) unlawfully adopting or infringing upon the PENTHOUSE Marks, and/or (ii) adopting or using any trade name, trademark, service mark, television, business card, radio, and/or print advertising, or signage depicting, comprising, containing or consisting of the PENTHOUSE Marks or similar to these marks;

c. committing any acts or making any statements calculated, or the reasonably foreseeable consequence of which would be, to infringe any of General Media's trademark rights, or to confuse, mislead, or deceive consumers as to sponsorship, approval, association or affiliation of General Media by, with, or of the Defendant;

d. diluting, blurring, passing off or falsely designating the origin of the PENTHOUSE Marks, and from injuring General Media's goodwill and reputation; and

e. conspiring with, aiding, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a), (b), (c) and (d) above;

2. That, consistent with paragraph 1 above, Defendant will remove from sale or display, and recall, any and all advertisements, signage, menus, Internet web pages, television, business cards, radio and/or print advertising, and any other materials bearing the mark PENTHOUSE or a mark confusingly similar to the PENTHOUSE Marks;

3. That Defendant, within five days after the entry and service on Defendant of an injunction, be required to deliver to the Court for destruction, or show proof of destruction of, any and all advertisements, signage, menus, Internet web pages, television, business cards, radio and/or print advertising, and any other materials in its possession, custody or control bearing or depicting any name or mark incorporating or confusingly similar to the PENTHOUSE Marks;

4. That Defendant be required to file with this Court and to serve upon Plaintiff, within five days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant complied with the injunction;

5. That Defendant be required to account for, and turn over to Plaintiff, all of its profits resulting from its infringement and other unlawful acts, increased as the Court finds just under the circumstances of this case;

6. That Plaintiff recover all of its damages sustained as a result of Defendant's activities and that those damages be trebled;

7. That Plaintiff recover its attorneys fees due to Defendant's unlawful and willful conduct;

8. That Plaintiff recover the costs of this action, along with prejudgment and post-judgment interest; and

9. That Plaintiff recover such other relief as the Court may deem just and proper.

Respectfully submitted,

GENERAL MEDIA COMMUNICATIONS, INC.

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
Telephone: (617) 526-9600
Facsimile: (617) 526-9899

Dated: December 2, 2005